# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>All equity, debt, or any other financial interest in Universal Ibogaine, Inc. purchased or acquired in the names of Hayco Construction, LLC and/or Travis Hayes with funds held at Pinnacle Bank in account number 800106488307 | Case No. 1:22MJ5-1 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ___Middle___ District of ___North Carolina___ is subject to forfeiture to the United States of America under ___18___ U.S.C. § __981(a)(1)(A), (C)__ *(describe the property)*:

All equity, debt, or any other financial interest in Universal Ibogaine, Inc. purchased or acquired in the names of Hayco Construction, LLC and/or Travis Hayes with funds held at Pinnacle Bank in account number 800106488307

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

/s/ Brison A. Lyons, II, Special Agent, IRS
*Applicant's signature*

Brison A. Lyons, II, Special Agent, IRS
*Printed name and title*

In accordance with Rule 4.1(b)(2)(A), the Applicant attested under oath to the contents of this Application, which was submitted to me by reliable electronic means, on this 6th day of January, 2022, at 3:00 p.m.

Date: 1/6/2022  3:00pm

*Judge's signature*

City and state: Durham, NC

Joe L. Webster, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Brison A. Lyons II, a Special Agent with the Internal Revenue Service (IRS) currently assigned to Criminal Investigation, being duly sworn, depose and state as follows:

1. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of or make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

2. I graduated from North Carolina Agricultural & Technical State University in 2004 with a Bachelor's Degree in Business Administration with a concentration in Finance. I have served in the capacity of a special agent since November 2004. I am a graduate of the Criminal Investigator Training Program and the Special Agent Basic Training Program at the Federal Law Enforcement Training Center. I have received extensive law enforcement training related to a variety of topics including search warrants, legal issues, and the law pertaining to Title 26, and sections of Title 18 and Title 31, for which the IRS has jurisdiction. I have conducted and assisted in detailed financial investigations concerning violations of the Internal Revenue Code, Bank Secrecy Act, and money laundering statutes. I have participated in and been the affiant for numerous search and seizure warrants related to Title 26, income tax violations and Title 18, money laundering violations. These warrants have included the searches of businesses, residences, storage facilities, computers, safes, and vehicles used for illegal activities.

1

3. Based on my training, experience, and participation in financial investigations involving the concealment of funds and assets from the IRS and other government agencies, I know that individuals involved in illegal activities generate large amounts of cash. The violators keep the cash in secure locations, including safes, financial accounts, and safe deposit boxes. On some occasions, the violators use the funds to purchase luxury items such as cars, houses, boats, and jewelry. On other occasions, the violators use the funds to invest in stocks or other businesses.

4. This affidavit is made in support of applications for seizure warrants for:

    a. <u>Financial Accounts</u>: All funds on deposit in Pinnacle Bank account number 800106488307 (hereinafter, the SUBJECT ACCOUNT), in the name of Hayco Construction, LLC, a construction company located in Pilot Mountain, North Carolina.

    b. <u>Investments</u>: All equity, debt, or any other financial interest in Universal Ibogaine, Inc. purchased or acquired in the names of Hayco Construction, LLC and/or Travis Hayes with funds held in the SUBJECT ACCOUNT (hereinafter, the SUBJECT INVESTMENTS).

As described below, there is probable cause to believe that monies in the SUBJECT ACCOUNT constitute or are derived from proceeds traceable to specified unlawful activity, specifically 18 U.S.C. §§ 1343 (wire fraud) and/or 1344 (bank fraud), and are therefore subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

2

Furthermore, and as described below, there is probable cause to believe that the SUBJECT INVESTMENTS were involved in or are traceable to transactions or attempted transactions in violation of 18 U.S.C. § 1957, or constitute or are derived from proceeds traceable to specified unlawful activity, specifically 18 U.S.C. §§ 1343 (wire fraud) and/or 1344 (bank fraud), and are therefore subject to seizure and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) or (C).

5. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of warrants, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish the requisite foundation for a probable cause finding to support the issuance of the requested warrants.

## PROBABLE CAUSE

6. As described in further detail below, there is probable cause to believe that HAYES engaged in a scheme to fraudulently obtain COVID-19 relief funds through the Paycheck Protection Program ("PPP") and to conceal the improper use of those funds by making materially false and fraudulent representations to federally insured financial institutions and the Small Business Administration ("SBA") regarding his intended and actual use of PPP funds.

### Paycheck Protection Program

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 that was designed to provide

3

emergency financial assistance to Americans suffering economic harm due to impacts of the COVID-19 pandemic. One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds to be paid as forgivable loans to small businesses for the specific purpose of paying employees, protecting their jobs, and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

8. PPP loan proceeds were required to be used by applying businesses for the following purposes only: to retain workers and maintain payroll, make mortgage interest payments, make lease payments, and make utility payments. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these allowable expenses within a designated period of time (usually 24 weeks after receiving the proceeds) and used at least sixty percent of the PPP loan proceeds on worker payroll expenses.

9. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. In the application, the applicant was required to state, among other things, the business's average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the applicant business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation proving its payroll expenses.

4

10. In the application, the applicant was also required to acknowledge the program rules and make certain affirmative certifications to be eligible for a PPP loan. These certifications required the applicant to affirm that, "The [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," and that the "loan proceeds will be used only for business-related purposes as specified in the loan application" and consistent with the PPP rules. The authorized representative of the applicant was also required to certify that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects," and "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

11. A small business's PPP loan application would be received and processed by a participating lender approved by the United States Small Business Administration ("SBA"). If a PPP loan application was approved, the participating lender would fund the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

12. To obtain forgiveness of the PPP loan, a qualifying business was required to submit a PPP loan forgiveness application signed by an authorized

5

representative of the business. That application again required the applicant to make certain affirmative certifications, including that, "The dollar amount for which forgiveness is requested: was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments)[.]" The applicant was also required to certify that, "I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges."

13. In or around January 2021, certain small businesses became eligible to apply for a second round of PPP funding. To obtain additional funding, the qualifying business was required to submit a PPP second draw loan application signed by an authorized representative of the business. Borrowers were generally eligible for a second draw PPP loan if the borrower: (i) previously received a PPP loan and used the full amount only for authorized uses (or would have used the full amount only for authorized uses by the time the second loan was disbursed); (ii) had no more than 300 employees; and (iii) demonstrated at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. Consistent with those eligibility requirements, the applicant was required to make certain affirmative certifications including that, "The Applicant received a First Draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses."

6

## HAYES and HAYCO CONSTRUCTION LLC

14. According to public records, HAYCO CONSTRUCTION, LLC ("Hayco") is a North Carolina Company formed on or about November 23, 2009. HAYCO's principal place of business is 129 Carson Street, Suite C, Pilot Mountain, North Carolina. Hayco's Annual Report, which was filed with the North Carolina Secretary of State on May 31, 2020, identifies the following as Hayco Company Officials: (1) John T. Hayes (President); (2) Myron Lee Hayes (Manager); and (3) Ronald Hoston Sutphin Jr. (Member).

15. According to the Hayco website, Hayco is "a trusted general contractor across multiple fields including medical office, pharmacy, light industrial, and commercial upfit."[1] The website further states that Hayco is "licensed in North Carolina and South Carolina, Virginia, and Tennessee...and maintains offices in both North Carolina and South Carolina." The website also identifies Travis Hayes and Myron Hayes as Hayco's "owners." The business email contact for Hayes is thayes@Hayco-construction.com.

## Universal Ibogaine, Inc.

16. According to public records, Universal Ibogaine, Inc. ("Universal Ibogaine") is a privately held company formed in 2018 and based in Vancouver, BC, Canada. In an article posted on the financial news and information website,

---

[1] *See* HAYCO CONSTRUCTION, https://hayco-construction.com/ (last accessed Aug. 8, 2021).

7

*proactiveinvestors.com,* in or around November 2020, Universal Ibogaine was "in the initial stages of implementing and financing its business plan, which is to develop a network of global ibogaine assisted psychotherapy clinics for treatment and ideally the cure of addictions to primarily opioids, as well as alcohol, cocaine, heroin, fentanyl and other stimulants."[2] According to the same article, Universal Ibogaine announced that it issued "a total of 9,369,392 units…at a price of $0.25 with a total value of $2,342,348." The units issued under the offering consist[ed] of one Universal Ibogaine [] common share and one warrant to purchase an additional [] common share." According to another article from a business news outlet, "Universal Ibogaine operates the Clear Sky Addictions Solutions clinic with a safe and effective seven-day treatment using Ibogaine all while changing attitudes towards vibrant new medical solutions."[3] According to the Universal Ibogaine website, Shayne Nyquvest is the Co-Founder of Universal Ibogaine.

## Relevant Financial Institutions

17. Allegacy Federal Credit Union is a credit union and member-owned financial cooperative based in North Carolina.

---

[2] *See* Jon Hopkins, *Universal Ibogaine completes first closing of $2.3 million under its current private placement offering of units,* PROACTIVE, https://www.proactiveinvestors.com/companies/news935053/universal-ibogaine-completes-first-closing-of-23-million-under-its-current-private-placement-offering-ofunits-935053.html (last accessed Aug. 24, 2021).

[3] *See* Eva Bieniarz, *The emerging psychedelics industry is giving new hope to addiction medicine,* FINANCIAL POST, https://financialpost.com/business-trends/why-this-emerging-industry-is-giving-society-a-new-lease-on-life (last accessed Aug. 24, 2021).

8

a. On or about May 31, 2018, Hayes opened a business checking account in Hayco's name at Allegacy. The account opening documents list Hayes as the Managing Member; and he has signatory authority over the account. Hayes's brother and business partner, Myron Hayes, also has signatory authority over the account.

b. On or about August 5, 2019, Hayes's wife, Dusty Shay Hayes, was added as a signatory on the account.

c. Hayes is the only individual authorized to make borrowing decisions relating to the account.

d. Review of the records from January 2019 through May 2020 reveal account activity relating to Hayco's business operations including: (i) deposits from Hayco's clients; (ii) tax payments to the NC Department of Revenue, Virginia Department of Taxation, and Internal Revenue Service; (iii) payroll and other business-related expenditures (e.g., utilities, employee health insurance, equipment, etc.).

18. Pinnacle Bank is a federally insured financial institution based in Tennessee with branches in North Carolina, South Carolina, and Virginia. Pinnacle Bank is an SBA Preferred Lender and participated as a PPP lender to small business.

a. On or about April 8, 2020, Hayes opened business checking account 800106488307 in Hayco's name at Pinnacle Bank (i.e., the "SUBJECT ACCOUNT"). Hayes is the sole signatory on SUBJECT ACCOUNT.

9

## The Scheme to Defraud

19. On or about April 8, 2020, Hayes opened a business checking account in HAYCO's name at Pinnacle Bank, account 800106488307 (*i.e.,* the SUBJECT ACCOUNT). Hayes provided Pinnacle Bank with a document titled, Limited Liability Company Authorization Resolution ("LLCAR"), which indicated that he is the only authorized person on the Hayco Account. The investigation revealed that Pinnacle Bank required Hayco to have two corporate officials sign an LLCAR authorizing Hayes to be the sole signatory on the account. The LLCAR was signed by Hayes (listed as "Manager or Designated Member"). The second signature appears to be consistent with HAYES' wife's name, Dusty Shay Hayes (listed as "Attest by One Other Manager or Designated Member"); however, at the time the LLCAR was completed, there was no public record of Dusty Shay Hayes having a role of Manager or Member at Hayco.

20. A document titled, Account Agreement is a signature card which lists the owner of the Hayco Account as Hayco, which is located at 129 Carson Street, Suite C, Pilot Mountain, NC. The agreement was signed by HAYES.

21. On or about April 15, 2020, Hayes signed and completed a PPP Application Form, also known as SBA Form 2483, for Hayco ("Hayco PPP Application 1"). The application was routed to Pinnacle Bank for processing. In Hayco PPP Application 1, Hayes requested $273,025.00 for Hayco to support payroll, lease/mortgage interest, and utilities. Also on Hayco PPP Application 1, Hayes

10

affirmed, among other information, that: (i) he had a 90% ownership in Hayco; (ii) Hayco had seventeen employees and an average monthly payroll of $109,210; and (iii) the funds would be used only for eligible expenses—specifically, to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments.

22. Hayes's application was approved, and on or about April 20, 2020, $273,025 in PPP funds were deposited into Hayco's account at Pinnacle Bank (i.e., the SUBJECT ACCOUNT). No other funds were in the account at the time of the deposit.

23. On or about April 30, 2020, Hayes e-mailed two employees of Universal Ibogaine, Lorrie Archibald and Shayne Nyquvest, copying a Pinnacle banker, and informed them that this his banker would wire funds for the purchase of one million shares of Universal Ibogaine stock. The following email, reproduced in Image 1 below, was obtained from Pinnacle Bank:

**Image 1**

```
From:        Travis Hayes <thayes@hayco-construction.com>
Sent:        Thursday, April 30, 2020 12:27 PM
To:          Lorrie Archibald
Cc:          Shayne Nyquvest; [redacted]
Subject:     RE: Universal Ibogaine NDA

Lorrie;

My banker is sending funding now and will be as shown below I originally told Shayne 2,000,000 shares but I cannot
because of COVID-19 fears.
Purchasing 1,000,000.00 shares of Universal Ibogaine Inc. at .10 CAD = $100,000.00 CAD = $71,950.73 USD at current
exchange rate.

Let me know if there are any problems.

Thanks;

Travis Hayes
President

129 Carson St. Suite C
Pilot Mt. NC 27041
T 336-444-4448 Ext. 302
F 336-217-7937
Hayco Construction

HAYCO
CONSTRUCTION
```

11

Records obtained from Pinnacle Bank regarding the above referenced purchase of one million shares of Universal Ibogaine stock include wiring instructions to a Universal Ibogaine bank account in Canada.

24. The same day, on April 30, 2020, an outgoing international wire transfer of $71,950.73 was made using the PPP funds in the SUBJECT ACCOUNT and sent to Universal Ibogaine's bank account. According to the Originator to Beneficiary section of the Wire Transfer Request, the wire transfer was for the benefit of "Travis Hayes to purchase one million shares of Universal Ibogaine stock at .10CAD equals amount in USD."

25. On or about May 15, 2020, Hayes e-mailed a Pinnacle Bank banker, copying Archibald and Nyquvest, with wire instructions for $35,498.75 to be wired to Universal Ibogaine. The following email, reproduced in Image 2 below, details the wiring instructions that Hayes provided to the Pinnacle Bank employee:

**Image 2**

| From: | Travis Hayes <thayes@hayco-construction.com> |
|---|---|
| Sent: | Friday, May 15, 2020 11:42 AM |
| To: | |
| Cc: | Lorrie Archibald; Shayne Nyquvest |
| Subject: | RE: Wire |
| Attachments: | IBOGAINE WIRE INSTRUCTIONS.docx |

The funds will be sent to the same account as the last transfer.

Providing a loan in the amount of = $50,000.00 CAD = $ 35,498.75USD at current exchange rate.

Please wire funds from account

Thank you.

Hayes instructed that these funds be wired from the SUBJECT ACCOUNT, which held only the PPP funds.

26. The same day, on May 15, 2020, an outgoing international wire transfer in the amount of $35,498.75 was made using the PPP funds in the SUBJECT ACCOUNT and sent to Universal Ibogaine's bank account. According to the Originator to Beneficiary section of the Wire Transfer Request, the wire transfer was for the benefit of "Travis Hayes to purchase One million shares at .10CAD equals amount in USD."

27. On or about October 2, 2020, Hayes completed, signed, and submitted a PPP loan forgiveness application wherein he asked for forgiveness of the entire balance of the Hayco PPP Loan 1, which was $273,025. In the forgiveness application, Hayes falsely affirmed that the dollar amount for which forgiveness was requested was used to pay costs that were eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments). Records from Pinnacle Bank show that Hayes did not use the PPP Loan 1 to pay eligible expenses. Instead, as explained, Hayes used the funds for personal investment purposes.

28. On or about October 28, 2020, an outgoing international wire transfer of $94,395.00 was made using the PPP funds in the SUBJECT ACCOUNT and sent to Universal Ibogaine's bank account. The Originator to Beneficiary section of the Wire Transfer Request reads, "purchase gold Transit 09710 Bank no 010." The only funds

13

in the SUBJECT ACCOUNT at the time of the transfer were the remaining funds from PPP Loan 1.

29. As of December 31, 2020, the balance in the SUBJECT ACCOUNT was $71,030.52, representing the balance of PPP Loan 1 that was not wired to Universal Ibogaine for purchase or acquisition of the SUBJECT INVESTMENTS described in paragraphs 24, 26, and 28.

30. On or about January 29, 2021, Hayes completed and signed a PPP Second Draw Borrower Application Form, also known as SBA Form 2483-SD for Hayco at Pinnacle Bank ("Hayco PPP Application 2"). In Hayco PPP Application 2, HAYES requested an additional $273,025.00 for Hayco to support (i) payroll costs, (ii) rent/mortgage interest, (iii) utilities, and (iv) covered operations expenditures.

31. Also on Hayco PPP Application 2, Hayes affirmed, among other information, that Hayco received a First Draw Paycheck Protection Program Loan and, that he used the First Draw (i.e., PPP Loan 1) only for eligible expenses (or that he will have done so by the time the second draw was disbursed). However, $201,844.48 from PPP Loan 1 had been used for personal investment purposes and not permissible expenses. Hayco's second PPP loan application was later approved and funded.

32. On or about January 29, 2021, $273,025.00 in PPP funds were deposited into SUBJECT ACCOUNT (hereinafter referred to as "HAYCO PPP Loan 2").

14

33. Records obtained as of September 30, 2021, show the remainder of HAYCO PPP Loan 1 and $273,025 from HAYCO PPP Loan 2, for a total of $344,055.52 were still in SUBJECT ACCOUNT.

34. Records obtained from Pinnacle Bank and Allegacy indicate that Hayes paid his payroll obligations, but did so using funds in the Allegacy account. As described, there is probable cause to believe that HAYES used the SUBJECT ACCOUNT solely to obtain two PPP loans and to invest a portion of the PPP loans in Universal Ibogaine, in violation of Title 18, United States Code, Sections 1343, 1344, and 1957 and the rules governing the PPP loan program.

## CONCLUSION

Based on the investigation described above, I submit there is probable cause to believe that monies described in paragraph 4.a. constitute or are derived from proceeds traceable to specified unlawful activity, specifically 18 U.S.C. §§ 1343 (wire fraud) and/or 1344 (bank fraud), and are therefore subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C); and that the investments described in paragraph 4.b. were involved in or are traceable to transactions or attempted transactions in violation of 18 U.S.C. § 1957, or constitute or are derived from proceeds traceable to specified unlawful activity, specifically 18 U.S.C. §§ 1343 (wire fraud) and/or 1344 (bank fraud), and are therefore subject to seizure and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) or (C).

Respectfully submitted,

/s/ Brison A. Lyons II
Brison A. Lyons II
Special Agent
Internal Revenue Service – Criminal Investigations

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 6th day of January, 2022, at 3:00 p.m.

_____
The Honorable Joe L. Webster
United States Magistrate Judge
Middle District of North Carolina